UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL J. BARRON,

        Petitioner,         Case Number: 04-CV-73788

v.        HON. GEORGE CARAM STEEH

PAUL RENICO,

        Respondent.
_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Daniel J. Barron, through counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, challenges his felony-murder conviction. Respondent argues that Petitioner's claims lack merit and that one claim is unexhausted. The Court determines that Petitioner's claims do not warrant habeas relief and therefore denies the petition.

### I. Factual Background

Petitioner's conviction arises out of the death of Roy Coward in his home in Grand Blanc, Michigan on December 11, 1999. The Michigan Court of Appeals set forth the pertinent facts as follows:

> On December 11, 1999, defendants [Petitioner and co-defendants David A. Cherry and James Prescott Burton] broke into a house for the purpose of robbing it. Inside the house, they encountered the victim, whom they held down and beat with their fists and a piece of a hockey stick that Burton had brought with him. While one or two defendants guarded the victim, the other defendant or defendants ransacked the house and discovered knives and guns owned by the

>victim. At one point, when the victim attempted to fight defendants, he was beaten and stabbed several times with a knife. Finally, the victim was shot in the head from close range and died. The night of the murder, Barron was seen covered in blood and acting incoherently and Burton was seen wearing blood-stained clothes and carrying a gun and a knife. Days after the murder, defendants separately turned themselves in to police and admitted being part of the robbery. All three defendants admitted to going to the house for the purpose of robbing it, but had conflicting stories about who beat, stabbed and shot the victim. None of the defendants admitted to personally stabbing or shooting the victim or having an intent to kill the night of the murder. DNA tests revealed that items linked to each defendant was covered in the victim's blood.

People v. Barron, No. 232284, slip op. at 2 (Mich. Ct. App. Apr. 24, 2003).

## II. Procedural History

Following a jury trial in Genesee County Circuit Court, Petitioner was convicted of first-degree home invasion, first-degree felony murder, and second-degree murder. On November 27, 2000, he was sentenced to fourteen to twenty-four months imprisonment for the first-degree home invasion conviction, life imprisonment for the first-degree felony murder conviction and life imprisonment for the second-degree murder conviction. Petitioner was jointly tried with co-defendants David A. Cherry and James Prescott Burton, before separate juries.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I. Where no evidence was presented to establish Mr. Barron's presence during and participation in the actual murder, was the evidence presented insufficient to support the murder convictions as an aider and abettor?
>
> II. Where the charges arise from the death of a single individual, are convictions and punishments for: A) second degree murder (as a lesser offense of first degree premeditated murder) and felony murder, violative of this defendant's double jeopardy protections? and B) felony murder (committed in the course of a home invasion) and home invasion (the underlying felony), violative of this defendant's double jeopardy protections?

Petitioner filed a supplemental brief in the Michigan Court of Appeals, presenting the

following additional issues:

    I.    Defendant was denied his right to a fair trial, by denial of his right to effective assistance of counsel by:

        A.    Defense counsel failed to file a motion to quash thereby compromising the verdict.

        B.    Defense counsel failed to exclude "highly prejudicial" and "inadmissible evidence."

        C.    Defense counsel failed to request proper jury instruction.

        D.    Defense counsel failed to file a motion for a new trial.

    II.    The trial court denied the defendant his right to a fair trial by abusing its discretion when it:

        A.    Denied defense motion for separate trials.

        B.    Denied defendant his right to fire his attorney and address the court.

        C.    Denied defense request for "abandonment instruction."

        D.    The trial court failed to give an instruction concerning "gang evidence."

        E.    Denied defense motion for a directed verdict.

    III.    Both trial counsels and the trial court errors, had a "cumulative error effect" as to deny the defendant his right to a fair trial.

The Michigan Court of Appeals consolidated the defendants' appeals, and vacated Petitioner's conviction and sentence for first-degree home invasion and for second-degree murder and affirmed Petitioner's conviction for first-degree felony murder. People v. Barron, No. 232284 (Mich. Ct. App. Apr. 24, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the following claims:

    I.    Where no evidence was presented to establish Mr. Barron's presence during and

      participation in the actual murder, the evidence was insufficient to support the murder conviction(s) as aiding and abetting in the murder of the victim in contravention of Mr. Barron's state and federal constitutional protections.

II.    Convictions for A) second degree murder and felony murder both arising from the death of a single individual are violative of Mr. Barron's state and federal double jeopardy protections; and B) convictions for both felony murder (committed in the perpetration of a home invasion) and the substantive underlying offense (home invasion) are violative of Mr. Barron's state and federal double jeopardy protections.

III.    Defendant was denied his right to a fair trial by denial of his right to effective assistance of counsel.

IV.    The trial court denied the defendant his right to a fair trial by abusing its discretion.

V.    Both trial counsel and the trial court errors had a "cumulative effect" as to deny the defendant his right to a fair trial.

The Michigan Supreme Court denied leave to appeal. People v. Barron, No. 124010 (Mich. Sept. 29, 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

I.    Defendant was deprived of his right to a fair trial as prescribed by the 5th Amendment due to his conviction on insufficient and highly prejudicial evidence.

II.    The state appeals court improperly applied the Strickland standard for ineffective assistance of counsel.

III.    The trial court committed reversible error by abusing its discretion when it improperly denied several of Petitioner's motions, thereby denying Petitioner of his right to a fair trial.

    A.    The trial court abused its discretion when it denied Petitioner's motion for separate trials.

    B.    The trial court abused its discretion when it denied Petitioner's request for a substitute court-appointed attorney.

      C.      The trial court abused its discretion when it failed to provide proper jury instructions.

              1.      The trial court denied Petitioner's request for an "abandonment" instruction.

              2.      The trial court failed to give an instruction regarding "gang evidence."

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall

complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

### A. Sufficiency of the Evidence

---

be presumed to be correct.

In his first claim for habeas corpus relief, Petitioner argues that insufficient evidence was presented to support his felony-murder conviction. Petitioner claims that he did not share co-defendant Cherry and Burton's intent to kill Mr. Coward and that he had no knowledge that the two men intended to kill at the scene of the home invasion. Petitioner further argues that he abandoned the home invasion and was not present when the murder occurred.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the Jackson standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); West v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding Petitioner's sufficiency of the evidence claim, the Michigan Court of Appeals, stated, in relevant part:

> Due process requires that the prosecution introduce sufficient evidence to support their felony murder convictions. Due process requires that the prosecution introduce sufficient evidence that could justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt. People v. Fisher, 193 Mich. App. 284, 287; 483 N.W.2d 452 (1992). . . .
>
> When reviewing a claim of insufficient evidence, this Court must view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. People v. Hardiman, 466 Mich. 417,

7

421; 646 N.W.2d 158 (2002). A reviewing court must make credibility choices in support of the jury verdict. . . . The prosecution need not negate every reasonable theory consistent with innocence, but need only convince the jury of the defendant's guilt in the face of whatever contradictory evidence the defendant may provide. . . . All conflicts in the evidence must be resolved in favor of the prosecution. People .v Terry, 224 Mich. App. 447, 452; 569 N.W.2d 641 (1997).

\* \* \*

. . . Barron admitted in his statement to police that he went to the victim's house with the intention of breaking in and robbing it. Barron knew that Burton was carrying a broken hockey stick when defendants went to the house. When defendants went inside the house, the victim ran at the front door and Burton hit him in the head with the hockey stick. Barron and Cherry held the victim down while Burton hit him about five times with a lot of force with the hockey stick. Barron admitted that he kicked the victim. The victim then grabbed an object and threw it at Barron. Cherry tackled the victim and subdued him. When Barron and Burton went to search the house, Burton found a gun and took it. When they went back downstairs, Barron saw that the victim was lying on his back. Cherry told Burton that the victim was not moving. When Cherry and Burton went into the basement, Barron ran out of the house. Barron's glove, sock, and pants were stained with large amounts of the victim's blood.

Several days after the murder, a witness overheard Barron say that he had just killed somebody and would do it again. The witness called 911 and told police that Barron said that "he had shot the dude in the back of the head." The witness told police that Barron had said that he was going to rob a guy, but shot him with a shotgun because the guy "got smart with him" and would not give up the items he was going to steal. The witness further told police that Barron had stated that he and others had beat a man up and had shot him. Barron bragged that he was not afraid to do it again.

Under these circumstances, we conclude that the evidence was sufficient to show that Barron either killed the victim himself or at least knew of Burton or Cherry's intent to at least cause great bodily harm. A rational factfinder could find that Barron killed the victim or was acting with wanton and willful disregard for the likelihood that the natural tendency of this behavior would cause death or great bodily harm. Barron admitted that he held the victim down while Burton beat him with a hockey stick. Barron saw Burton take one of the victim's guns. In his statement to police, Barron did not mention whether he was present when Burton stabbed or shot the victim. However, Barron was seen after the killing covered in the victim's blood. A witness heard Barron saying after the killing that he shot the victim in the head. In reviewing the sufficiency of the evidence, a reviewing court must draw all reasonable inferences and make credibility choices in support

> of the jury verdict. Nowack, *supra* at 400. The witness' testimony shows that Barron killed the victim or at least knew that the victim was killed and how he was killed. Given this testimony and the evidence that Barron was covered in the victim's blood and was present for much of what occurred at the house, it would be reasonable for the jury to infer that Barron shot the victim or was at least present when the victim was stabbed or shot. If Barron did not shoot the victim, it would be reasonable for the jury to infer from the circumstances that Barron knew of Burton or Cherry's intent to at least cause great bodily harm. The evidence, viewed in a light most favorable to the prosecution, was sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that Barron was guilty of felony murder

Barron, slip op. at 3-5.

The Court finds this resolution of Petitioner's sufficiency of the evidence claim was neither contrary to nor or an unreasonable application of clearly established federal law. The Court of Appeals' decision cited case law which plainly incorporated the Jackson standard and explained and supported its conclusion that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. Petitioner has not presented any new evidence to show that the state court's findings of fact were erroneous. Therefore, according the state court's factual findings a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), this Court concludes that the state court of appeals' decision that all of the elements of the crime were satisfied did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## B. Alleged Ineffective Assistance of Counsel

Petitioner next asserts that he is entitled to habeas relief because his attorney was ineffective in failing to object to Charles Barna's testimony. Charles Barna, a forensic scientist and supervisor of the Michigan State Police, East Lansing Laboratory, testified regarding a report prepared by forensic scientist Sarah Thibaut evaluating evidence in this case. Thibault, who was supervised by Barna, was unavailable to testify at trial because she was on maternity leave. Petitioner argues that, because Barna did not conduct the testing himself and did not help to prepare the report, counsel was unable to cross-examine him regarding the methods used to perform the testing or the accuracy of the results. In addition, Petitioner argues that the testimony was impermissible hearsay testimony. Petitioner maintains that counsel's failure to object to the admission of Barna's testimony was ineffective.

Respondent argues that this claim is unexhausted. A petitioner must exhaust his state court remedies prior to seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. §§ 2254(b)(1)(A) & 2254(c). A petitioner "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." Levine v. Tornik, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).

A federal court may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims. 28 U.S.C. § 2254(b)(2); *see also* Cain v. Redman, 947 F.2d 817, 820 (6th Cir. 1991), *cert. denied*, 503 U.S. 922 (1992) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the

10

power of the court).  The Court has concluded that this claim does not warrant habeas corpus relief.  Accordingly, in the interests of efficiency and justice, the Court will address Petitioner's claim rather than dismiss the petition on the ground of failure to exhaust.  *See* 28 U.S.C. § 2254(b)(2); Cain, 947 F.2d at 819 (holding that where an unexhausted federal constitutional claim is plainly meritless, "it would be a waste of time and judicial resources to require exhaustion").

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id. at 687.  Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial."  Id.

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 694-95 (internal citations omitted).


The Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." Id. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 698. The Sixth Circuit, applying the Strickland standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." McQueen v. Scroggy, 99 F.3d 1302, 1311 (6th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997).

Petitioner does not claim that the report was not properly authenticated or that Barna was not properly qualified as an expert. His attorney cross-examined Barna regarding the methods used in the laboratory and the results of the testing. Petitioner has failed to show that Barna's testimony was inadmissible or that Petitioner's attorney was ineffective in his cross-examination of Barna. Therefore, Petitioner has failed to establish ineffective assistance of counsel in this regard.

### C. Trial Court's Denial of Petitioner's Motions

Finally, Petitioner argues that the trial court erred in denying his motion for separate trial, denying his motion for substitute counsel, and denying his request for jury instructions on abandonment and gang evidence.

**1. Motion for Separate Trial**

First, Petitioner claims that the trial court erred when it denied his motion for separate trials. He argues that his defense was compromised by each defendant's claim that he was not the one who killed Mr. Coward and that the cumulative evidence against him and his co-defendants unfairly swayed the jury.

The Sixth Circuit Court of Appeals has held that "while a claim of due process violation based on antagonistic defenses between jointly tried defendants is cognizable in habeas corpus, in order to prevail, a petitioner must show both an abuse of discretion and prejudice from denial of a severance motion." Jenkins v. Bordenkicher, 611 F.2d 162, 168 (6th Cir. 1979). "To find prejudice sufficient to require habeas corpus relief where it is not claimed that a joint trial resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses . . . or the right to confrontation . . ., we must determine from the entire record that the fundamental right to a fair trial as secured by the Fourteenth Amendment has been abridged." Id. Antagonistic defenses exist "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." U.S. v. Harris, 9 F.3d 493, 501 (6th Cir. 1993), *citing* U.S. v. Crawford, 581 F.2d 489 (5th Cir. 1978). "The mere fact that each defendant points the finger at another is insufficient [to require severance]; the defendant must show that the antagonism confused the jury." U.S. v. Horton, 847 F.2d 313, 317 (6th Cir. 1988).

The Michigan Court of Appeals held that the trial court did not err in denying Petitioner's motion for separate trial. The court observed that while the trial court denied the motion for a separate trial, it gave each defendant a separate jury, which the court held preserved Petitioner's right to a fair trial. The Michigan Court of Appeals held that evidence that was not admissible

13

against Barron was admitted outside the presence of Barrnon's jury and that no evidence which implicated Barron and which would have been inadmissible at a separate trial was admitted. The state court held that Petitioner was not prevented from admitting any exculpatory evidence by virtue of the joint trials. Barron, slip op. at 13. The Michigan Court of Appeals further held as follows:

> Furthermore, defendants did not present antagonistic, mutually exclusive defenses. The prosecution argued at trial that Barron could be found guilty as a principal or an aider and abettor. This argument reduced the risk of prejudice from the joint trial. . . . Additionally, "[f]inger pointing by the defendants when such a prosecution theory is pursued does not create mutually exclusive antagonistic defenses." . . . Therefore, the fact that defendants all admitted that they broke into Coward's house, but blamed each other for the killing does not mean that their defenses were mutually exclusive. The properly instructed jury could have found all three defendants similarly liable without any prejudice or inconsistency because one found guilty of aiding and abetting can also be held liable as a principal. . . .
>
> Finally, Barron does not argue how he was prejudiced by his jury being exposed to the admission of this evidence and testimony at the joint trial. Additionally, the trial court reduced any prejudice by instructing the jury as follows: "The fact that [defendants] have been on trial at the same time but with separate juries is not evidence that they were associated with each other or that any one of them is guilty." Therefore, we conclude that the trial court did not abuse its discretion in failing to grant Barron's motion for separate trials.

Id. slip op. at 13.

Petitioner does not allege that he was deprived of a specific constitutional right. Therefore, to establish entitlement to habeas corpus relief, he has to show that his fundamental right to a fair trial has been abridged. Jenkins, 611 F.2d at 168. After a careful review of each defendant's defenses, the evidence presented at trial, and the potential for prejudice, the Michigan Court of Appeals determined that denial of the motion for severance did not deprive Petitioner of a fair trial. Petitioner has not established that the state court's determination was

contrary to or an unreasonable application of Supreme Court precedent. In addition, Petitioner has failed to show that the trial court's limiting instructions were insufficient. Accordingly, Petitioner is not entitled to habeas corpus relief with respect to this claim.

## 2. Motion for Substitute Counsel

Next, Petitioner claims that the trial court erred in denying his motion for substitute counsel. Petitioner claims that he and his attorney had substantial disagreements regarding defense strategy and a breakdown in the attorney-client relationship.

The Sixth Amendment guarantees an accused in all criminal prosecutions the right to the assistance of counsel in his defense. U.S. Const. amend. VI. "[T]he purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial.'" Wheat v. U.S., 486 U.S. 153, 159 (1988), *quoting* Strickland, 466 U.S. at 689. "[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" Id., *quoting* U.S. v. Cronic, 466 U.S. 648, 657 n.21 (1984). Further, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. Thus, "when a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate." Ray v. Curtis, 21 Fed. Appx. 333, 335 (6th Cir. 2001).

The Michigan Court of Appeals held that Petitioner failed to show that appointment of substitute counsel was necessary. The Michigan Court of Appeals observed that Petitioner failed to "give any reason why he was entitled to substitute counsel or why he even wanted substitute counsel. . . . Furthermore, . . . [Petitioner] does not argue how he was prejudiced by the trial

court's denial of his request for substitute counsel." Barron, slip op. at 14.

In his habeas petition, other than a conclusory assertion that he and his attorney suffered a breakdown of the attorney-client relationship and disagreed about the appropriate defense strategy, Petitioner fails to provide any specific reason why he was entitled to substitute counsel. The "constitutional concern" is whether Petitioner received an "effective advocate." Ray, 21 Fed. Appx. at 335. He has failed to show that he did not. Thus, Petitioner's conclusory argument is insufficient to establish that the state court's finding was contrary to or an unreasonable application of Supreme Court precedent.

### 3. Motion for Jury Instructions on Abandonment and Gang Evidence

Finally, Petitioner argues that the trial court erred in denying his request for a jury instruction on abandonment and gang evidence.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) *(quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right'". Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (*quoting* Cupp, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.'" Id. (quoting Boyd v. California, 494 U.S. 370, 380 (1990)). The Supreme Court has held that a petitioner seeking habeas corpus relief based upon the omission of a particular

instruction carries an "especially heavy" burden because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

The Michigan Court of Appeals held that the trial court did not err in declining to give an abandonment instruction because the evidence did not support such an instruction. Under Michigan law:

> the defendant is not entitled to the defense [of abandonment] if her motivation for withdrawal was that she feared arrest, realized that she lacked an essential instrumentality to complete the crime or for some other reason could not successfully proceed, or if she merely postponed her criminal endeavor until a better opportunity presented itself.

Barron, slip op. at 15 (internal quotations omitted).

The Michigan Court of Appeals held that Petitioner's actions did not indicate an abandonment of the crime. The state court cited the following facts in reaching this conclusion: Petitioner admitted to police that he broke into the victim's house to rob him, admitted kicking the victim and holding him down while Burton struck him with a hockey stick, searched the house for valuables, and left the house after Cherry and Burton went into the basement. The following day, Petitioner called Burton to request his share of the money they had stolen. Id. Based upon these facts, the state court concluded that there was "no evidence that Barron abandoned commission of the crimes before they were committed." Id.

With respect to Petitioner's claim that the trial court erred in failing to give an instruction regarding gang involvement, the Michigan Court of Appeals held that the trial court's general instruction about the consideration of other bad acts evidence was sufficient to caution the jury that evidence that Petitioner was in a gang should not impact its determination of his guilt. Id. at

17

15-16.

Petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent, or that the trial court's failure to instruct the jury on abandonment or gang evidence so infected the entire trial as to result in a due process violation. Therefore, the Court denies relief on these claims.

### IV.  Conclusion

Petitioner has not established that the State of Michigan is incarcerating him in violation of the Constitution or laws of the United States. *See* 28 U.S.C. § 2254(a). The decisions of the Michigan courts upholding the petitioner's convictions were neither contrary to, nor an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  June 13, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on June 13, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk